### Ligon v. Osborn, et al.

(Decided October 16, 1913).

### Appeal from Hopkins Circuit Court.

1. Wills—Contest—Mental Incapacity—Evidence—Sufficiency.—In a will contest, evidence examined and held sufficient to sustain a finding in favor of the will.

2. Instructions.—Where the instructions given by the court fully present the law of the case, it is not error to refuse other instructions.

3. Wills—Contest—Evidence.—In a will contest, evidence of the probate of the will in the county court is not prejudicial where that fact is admitted by the pleadings.

4. Witnesses—Collateral Matter—Impeachment.—Impeachment of a witness on a collateral matter held not prejudicial under the facts of the case.

5. Wills—Evidence.—Where the answer of a witness is equivalent to no answer at all, or is such that it could not have affected the jury one way or the other, its admission is not error.

6. Trial—Improper Argument of Counsel.—Argument of counsel based on the interest of the witness is proper.

YOST & LAFFOON and C. J. WADDILL for appellant.

WILLIAM J. COX for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

I. T. Osborn, a resident of Hopkins County, Kentucky, died in the month of March, 1912, leaving a last will and testament, dated August 30, 1905, to which he subsequently added a codicil dated August 2, 1911. The will and codicil were probated in the county court. Ruby Ligon, a grand-daughter of testator, instituted contest proceedings in the Hopkins Circuit Court against the other devisees. There the jury found for the will. Judgment was entered accordingly, and the contestant appeals.

The testator was 84 years old when he died. He was 77 years of age when the original will was written, and 83 years of age when the codicil was written. Testator was twice married. His first wife was Mary Downey. There was born to this union one son, Everett Osborn, and four daughters. The daughters all died before the testator, and all save one left children surviving them. Besides his son, Everett Osborn, there survived the testator, the following grandchildren: Oscar Kirkwood, the only son of testator's daughter Kate; Ruby Ligon, the only daughter of testator's daughter Minnie; and Eula Brown, Lena Alderson, Hallie Brown, Bessie Stiles, Everett O'Bryant, Dixie Hawkins and Walter O'Bryant, the only children of testator's daughter Jennie. Testator was also survived by Mrs. Josie Osborn, his second wife, to whom he was married in the year 1895. Just prior to their marriage he and his second wife entered into an antenuptial agreement, whereby each was to hold his or her separate estate free from the control of the other, and Mrs. Osborn, if she should survive Mr. Osborn, should take from the latter's estate $1,000 in lieu of all other claims. This contract was executed by the parties in the presence of Mrs. Osborn's two brothers. It was reacknowledged August 30, 1905, the day testator's will was written.

By the terms of the will and codicil in question, the testator devised to the contestant, Ruby Ligon, the sum of $3,000 in money; to his other grandchildren certain lands and money, and to his only surviving son, Everett Osborn, the remainder of his estate. While under the division thus made, Everett Osborn, testator's only son,

received much more than any of the testator's grand-children, it does not appear that any of the other grand-children of the testator, with the possible exception of Oscar Kirkwood, received more than was devised to Ruby Ligon.

The evidence for the contestant is to the effect that the testator, as he grew older, had frequent spells of sickness, and became feeble in mind and body. It was also shown that at one time he had a surveyor divide out his lands, and declared his intention of giving to Ruby Ligon his home farm. When he wrote his will he did not carry out this purpose, but gave her $3,000 instead. Some three or four witnesses testified that, in their opinion, testator did not have sufficient mind to know the nature and extent of his estate, or the natural objects of his bounty and his obligations to them, or to dispose of his estate according to a fixed purpose of his own.

The evidence for the contestees is to the effect that the Messrs. Gordon were sent for by the testator to prepare his will. When they came to his house he was in bed. He directed that certain maps, deeds and other papers be brought to him. The attorneys did not know the names of his grandchildren. The testator did know them, and had clearly in mind exactly what he desired to do with his estate. They drew the will according to his direction. His mind was clear at the time, and he knew exactly what he wanted to do. Several witnesses who had had business transactions with the testator testified to his strong character, his clear intellect and has ability to attend to business up to the time of his death.

One of the grounds urged for reversal is that the verdict is flagrantly against the evidence. We deem it unnecessary to state the evidence at length. There was an utter failure to show that the testator was the subject of undue influence. While certain witnesses expressed a doubt as to his mental capacity, none of them testified to a single fact or circumstance tending to support this conclusion. On the other hand, the evidence for contestees makes it plain that the testator was a man of fine intellect, of strong character, and of unusual business capacity, even up to the time of his death. It is rare that a will contest comes to this court with as little evidence of mental incapacity as may be found in this record. Not only is the verdict of the jury not flagrantly against the

evidence, but it is difficult to see how the jury could have reached any other conclusion.

We deem it unnecessary to set out the instructions. It is sufficient to say that they have been approved by this court in a long line of decisions, and fully presented the law of the case. That being true, it was not error to refuse the instructions offered by contestants. L. & N. R. R. Co. v. Roe, 142 Ky., 456; Louisville Railway Co. v. Bryant, 142 Ky., 159.

Certain errors in the admission of testimony are relied on. In the first place it is insisted that the court erred in permitting evidence of the probate of the will by the county court. The evidence complained of is as follows:

"Q. Was the document which you read to the jury admitted to probate by that court?

"(Contestant objects; overruled; contestant excepts.)

"A. This is the identical document."

In the petition of contestant it was alleged, and not denied by contestees, that the will in question had been probated by the county court. We fail to see wherein contestant was prejudiced by evidence of an admitted fact.

On the cross examination of Mrs. Josie Osborn, testator's widow, in regard to the execution of the marriage contract, witness was asked if Mr. Gordon did not ask her if she did not acknowledge the contract to be her act and deed, and consent that it might be recorded. Witness replied that Mr. Gordon merely asked her if she acknowledged that to be her signature, and did not ask her if she consented that the contract might be recorded. In rebuttal Mr. Gordon was asked if he did not ask witness if she consented that the marriage contract might be recorded, and he replied that he did. As this evidence related entirely to a collateral fact, it should not have been admitted, but under the facts of this case we conclude that its admission was not prejudicial to the substantial rights of the contestant.

Again it is insisted that Dr. J. D. Story was permitted to give incompetent evidence. This witness, on cross examination, was asked if he had ever seen testator's will. He said that he had not. He was then asked "Do you know any of its provisions?" and answered

"Only what I have heard on the outside." He was then asked the following question:

"Q.   From what you have heard on the outside is there anything in the will that indicates that he disposed of that property by any other than a fixed purpose of his own?

"(Objected to; overruled; contestant excepts.)'

"A.   I do not know enough about the will to answer that."

It is manifest that if the witness had given a definite answer to the question his evidence would not have been competent.   As a matter of fact, however, he expressed no opinion on the question, and his answer is equivalent to no answer at all.   That being true it could not have affected the jury one way or the other.

One of contestant's chief grounds for complaint was improper argument on the part of counsel for the propounders. In referring to the testimony of the widow of the testator, counsel used the following language:

"This witness has a reason for giving her testimony this way. (To the effect that her husband in her opinion did not have sufficient mind at the time he made his will to know the natural objects of his bounty, his duty to them, the nature and character of his estate, and how to dispose of the same according to a fixed purpose of his own.) If she can succeed in breaking this will then she will be in a position to go back on her marriage contract, too."

The particular language complained of as improper is the following:

"If she can succeed in breaking this will then she will be in a position to go back on her marriage contract too."

It appears that Mrs. Osborn was assisting the contestant in her efforts to break the will. During the progress of her testimony she was asked certain questions in regard to the marriage contract.   She had testified that her husband had the marriage contract drawn, as she was not present.   Though she admitted signing the contract, she stated that she was not in favor of it, and she did not do it willingly. Furthermore, the marriage contract was referred to in the will.   The witness had not only testified that the testator did not possess sufficient mental capacity to make the will, but she had sought to cast suspicion on the validity of the marriage contract itself.   We think it clear that counsel merely intended

to bring to the attention of the jury the interest of the witness, and that being true, his remarks were within the limits of legitimate argument.

Finding in the record no error prejudicial to the substantial rights of the appellant, it follows that the judgment should be affirmed, and it is so ordered.